IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CARRIE GILLOCK, | ) | Civil No. 09-6370-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Drew L. Johnson
Attorney at Law
1700 Valley River Drive
Eugene, OR 97401

Linda S. Ziskin
Attorney at Law
P.O. Box 2237
Lake Oswego, OR 97035

    Attorneys for Plaintiff

FINDINGS AND RECOMMENDATION - 1

Adrian L. Brown
Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Lisa Goldoftas
Social Security Administration
701 Fifth Avenue, Suite 2900
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Carrie Gillock brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income (SSI) benefits under the Social Security Act (the Act). Plaintiff seeks an Order reversing the decision of the Commissioner and remanding the action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff filed her application for SSI benefits on December 11, 2008, alleging that she had been disabled since February 8, 2006. After her application was denied initially and upon reconsideration, plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

A hearing was held before ALJ James Yellowtail on September 1, 2009.[1]  In a decision dated September 22, 2009, ALJ Yellowtail found that plaintiff was not disabled within the meaning of the Act.  That decision became the final decision of the Commissioner on November 4, 2009, when the Appeals Council denied plaintiff's request for review.  In the present action, plaintiff seeks review of that decision.

### Factual Background

Plaintiff was born on August 21, 1970, and was 40 years old when the ALJ issued his decision.  She has a high school education, and has past relevant work experience as a hotel housekeeper, an office manager, and a retail cashier.

### Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.

 If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

---

[1] At the hearing, plaintiff amended her alleged onset of disability date to December 14, 2007.

FINDINGS AND RECOMMENDATION - 3

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the

national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. Id.

### Hearing Testimony

1. **Plaintiff**

Plaintiff testified as follows at the hearing before the ALJ:

Plaintiff last worked as a hotel housekeeper until she was arrested for mail fraud in December, 2007.[2] Before that, plaintiff had last worked in an electronics assembly position from which she had been fired. She trained to work as a bank teller, but was never employed in that field. Plaintiff also completed a real estate course in California in 2005, but did not work in that field.

Plaintiff was not looking for work because she had concentration problems. Her mind kept spinning, and she became "overwhelmed." Plaintiff went to therapy, but did not think that it was effective. Though she took Prozac, sometimes she could not "handle it" when things happened.

Plaintiff began her days sitting in the backyard trying to "figure out what [she] needed to do that day." She read "easy books," and had trouble understanding and concentrating.

---

[2]Plaintiff was incarcerated for approximately one year following her conviction.

FINDINGS AND RECOMMENDATION - 5

Plaintiff had insomnia, and napped during the day when she could.  She could prepare simple meals and did some housework, but had difficulty shopping.

Plaintiff began having significant problems functioning after her mother died in 2006.  After her mother's death, plaintiff started hearing voices, which told tell her to do things "that normally you would know are wrong."

2. **Lay Witness Testimony**

Vickie Falwell, plaintiff's friend, roommate, and mail theft accomplice testified as follows: Ms. Falwell had known plaintiff for 11 years, and helped plaintiff with her daily activities.  Plaintiff had depression and social anxiety, and had experienced a panic attack that required her to leave a church service the day before the hearing.  Plaintiff sometimes "freak[ed]" when she was grocery shopping, and had to leave the store.  Her medications were of some help, but did not "help her all the way especially with her concentration."  Plaintiff missed her mother, cried a lot, and was "very much not wanting to live."

3. **Vocational Expert's Testimony**

The ALJ posed a vocational hypothetical describing an individual with plaintiff's age, education, and vocational background, who could perform light work, and who was limited to simple tasks with short, simple instructions.  The VE testified that such an individual could not perform any of plaintiff's past relevant work, but could work as a mail sorter, a bottle packer, or a collator.  She testified that adding a restriction precluding work with the public would not eliminate these jobs, but that a need to lie down for an hour during the day at various times would preclude all competitive employment.

FINDINGS AND RECOMMENDATION - 6

The VE testified that a "marked" limitation in the ability to remember, understand, and carry out detailed instructions, or to maintain attention and concentration for extended periods, would preclude employment. She also testified that, though simple work does not require extended concentration, it does require reasonable pace and persistence. The VE testified that a "certain amount of attention" was required "for all work, simple, routine or otherwise," and that an individual who had a marked limitation in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods could not sustain gainful employment.

### ALJ's Decision

At the first step of his disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since applying for SSI on December 11, 2008.

At the second step, the ALJ found that plaintiff's "severe" impairments included major depression, generalized anxiety disorder, post traumatic stress disorder, and personality disorder.

At the third step of the disability analysis, the ALJ found that, alone or in combination, plaintiff's impairments did not meet the criteria of any impairment in the "applicable Listings" in 20 C.F.R. Pt 404, subpt. P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526).

In his RFC assessment, the ALJ found that plaintiff could perform a full range of "at least light work with the following limitations: unskilled work consisting of simple routine tasks involving simple instructions that do not require contact with the general public." In

FINDINGS AND RECOMMENDATION - 7

assessing plaintiff's RFC, the ALJ found that plaintiff's testimony concerning the severity of her impairments was "less than credible . . . ."

At the fourth step, the ALJ found that plaintiff could not perform any of her past relevant work.

At the fifth step, the ALJ found that plaintiff could work as a mail sorter, a light packager, or a collator, and that these jobs exist in substantial numbers in the national economy. He therefore found that plaintiff was not disabled within the meaning of the Act.

### Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771,

FINDINGS AND RECOMMENDATION - 8

772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

**Discussion**

Based upon "[c]onsulting psychological evaluation and treatment records," the ALJ concluded that plaintiff's mental disorders resulted in moderate limitations in plaintiff's ability to maintain concentration, persistence, and pace.  Plaintiff contends that the ALJ erred in failing to incorporate this limitation in his assessment of her RFC.  She also argues that the vocational hypothetical which limited her to "unskilled work consisting of simple routine tasks involving simple instructions that do not require contact with the general public," failed to account for this limitation.   Plaintiff further contends that the ALJ erred in failing to address the Global Assessment of Functioning (GAF) score of 45 that Dr. Steven Mussack assigned in his mental health assessment dated January 5, 2009.  She argues that her consistently low GAF scores, which also included a GAF of 48 assessed by Dr. Mussack in July, 2007, and a GAF of 50 assessed by Dr. Grounds in February, 2008, are evidence of her "difficulties in tasks related to holding a job."[3]

In support of her contention that the ALJ's RFC and hypothetical failed to account for limitations in her ability to maintain concentration, persistence, and pace, plaintiff cites the VE's testimony that, though simple work does not require extended concentration, it does

---

[3] A GAF in the range of 41-50 indicates "[s]erious symptoms . . .OR any serious impairment in social, occupational, or school functioning . . . ." American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed., text rev. 2000 (DSM-IV-TR).

FINDINGS AND RECOMMENDATION - 9

require reasonable pace and persistence, and her testimony that all work requires "[a]ttention to the job at hand," and that "productivity and attention" are "basic disciplines of holding a job." Plaintiff cites decisions, including decisions from this district, in which courts have concluded that a limitation to "simple, unskilled" work does not adequately address deficiencies in concentration, persistence, or pace. See, e.g., Mudgett v. Astrue, No. 07 CV-485-CL (D. Or. Apr. 11, 2008, adopted May 1, 2008) and decisions cited therein; Berjettej v. Astrue, No. 09-CV-892-BR (D. Or. Jul. 29, 2010).

Based upon a careful review of the relevant portion of the record, the parties' arguments, and relevant decisions, I conclude that the ALJ's decision was supported by substantial evidence, and did not reflect legal error. Plaintiff has cited, and I have found, no authority for the proposition that GAF scores in the range assigned to plaintiff definitively establish an inability to perform substantial gainful activity. Instead, as the Commissioner notes, the Agency does not directly correlate the GAF scale to the severity requirements in the listings of mental disorders. See 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000) (discussing comments to 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 12.00D). The ALJ noted that Dr. Grounds, who assigned the GAF score of 50, concluded that, with therapy and medication, plaintiff could return to work. Dr. Mussack assigned the GF score of 45 that the ALJ did not discuss. His recommendation that plaintiff participate in therapy focusing on employment and career development implied at least that plaintiff's GAF score did not indicate that mental impairments precluded plaintiff's employment.

The Commissioner correctly notes that a GAF assessment reflects a clinician's subjective judgment concerning the severity either of an individual's functional impairments or symptoms, DSM-IV-TR at 32-33, and that symptoms reflect an individual's description of

FINDINGS AND RECOMMENDATION - 10

his or her impairments. SSR 96-7p, *available at* 1996 WL 374186 at *2. The ALJ here found that plaintiff's description of the severity of her symptoms and impairments was not credible, and plaintiff does not challenge that finding. It is apparent that the ALJ took into account those limitations which he concluded were supported by the record, and did not include in his RFC or vocational hypothetical any limitations based upon plaintiff's subjective complaints that he did not find credible. The ALJ concluded that, despite her low GAF scores, plaintiff retained the functional capacity required for competitive employment, subject to the limitations set out in the vocational hypothetical. He cited substantial evidence supporting the conclusion that, despite her moderate difficulties in concentration, persistence, and pace, plaintiff could perform the jobs cited by the VE in response to the vocational hypothetical.

As noted above, courts in this district have sometimes concluded that an ALJ's limitation to "simple" work has not adequately accounted for a claimant's moderate deficiencies in concentration, persistence, or pace. Though these cases are instructive, they do not establish that, regardless of the underlying circumstances, a limitation to simple, routine work cannot sufficiently account for moderate limitations in a claimant's ability to maintain concentration, persistence, or pace.

The Ninth Circuit Court of Appeals has observed that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) (citing Howard v. Massanari, 255 F.3d 577, 582 (8th Cir. 2001); Smith v. Halter, 307 F.3d 377, 379 (6th Cir. 2001)). In Stubbs-Danielson, the court concluded that a limitation to "simple, routine,

FINDINGS AND RECOMMENDATION - 11

repetitive sedentary work, requiring no interaction with the public" sufficiently accounted for moderate limitations in a claimant's ability to perform at a consistent pace without an unreasonable number of rest periods and mild limitations in several other areas of mental functioning. Id. at 1173-74. The court reached this conclusion even though the VE had testified that "anything more than a mild limitation with respect to pace would be precluded from employment except in a sheltered workshop . . . ." Id. The court noted that the ALJ had rejected the VE's testimony because it did not address the claimant's RFC "and did not appear to be based on her individual record as a whole," and indicated that it would not disturb the ALJ's determination "where, as here, the evidence reasonably supports the ALJ's decision." Id. at 1174.

Here, as in Stubbs-Danielson, the adequacy of the limitations imposed turns on whether the ALJ's assessment is "consistent with the restrictions identified" in the medical record. Based upon my review of the medical record, I conclude that it is. The ALJ accorded significant weight to the opinion of Bill Hennings, Ph.D., an Agency psychologist who reviewed the medical evidence and completed a Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment. He gave lesser weight to the opinion of Sandra Lundblad, Psy.D., another reviewing Agency psychologist, who concluded that plaintiff's impairments were more mild.

Dr. Hennings concluded that plaintiff was not significantly limited in her ability to carry out very short, simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and make simple work-related decisions. Dr. Hennings marked boxes

FINDINGS AND RECOMMENDATION - 12

indicating that plaintiff was moderately limited only in her abilities to carry out detailed instructions, maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Dr. Hennings clarified his opinion concerning these limitations in a narrative portion of the form, where he opined that plaintiff could carry out simple tasks "on a consistent basis."  He further opined that plaintiff's mental health symptoms "would be expected to affect work pace consistency, but would not be excessively disruptive to completing a normal workday/workweek within acceptable work pace consistency tolerances for many jobs."

      The ALJ's assessment of plaintiff's limitations, which was set out in his RFC and vocational hypothetical, was based upon substantial evidence in the medical record, and was consistent with the restrictions identified in that record.  Under these circumstances, the ALJ's limitation to "unskilled work consisting of simple routine tasks involving simple instructions that do not require contact with the general public" adequately addressed plaintiff's moderate limitations in the ability to maintain concentration, persistence, or pace.  The ALJ's conclusion that plaintiff could perform the work identified by the VE was supported by substantial evidence in the record and was not based upon legal error.  The Commissioner's decision should be affirmed.

## Conclusion

      A judgment should be entered affirming the decision of the Commissioner and dismissing this action with prejudice.

FINDINGS AND RECOMMENDATION - 13

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due July 18 , 2011. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 29th day June, 2011.

/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge